

**U.S. Department of Justice**

Appellate Staff
Civil Division

---

**Filed Electronically**                    July 15, 2020

Hon. Christopher G. Conway, Clerk of Court
U.S. Court of Appeals for the Seventh Circuit
Everett McKinley Dirksen U.S. Courthouse
219 S. Dearborn St., Rm. 2722, Chicago, IL 60604

**Re:    *Dale Hartkemeyer et al.* v. *William P. Barr* (No. 20-2262)**

Dear Mr. Conway:

This morning, the United States District Court for the District of Columbia entered the two attached orders, each of which preliminarily enjoined the government from proceeding with the execution of federal capital inmate Wesley Ira Purkey.  See *In the Matter of the Federal Bureau of Prisons' Execution Protocol Cases*, No. 19-mc-145 (D.D.C.), Dkt. 146; *Wesley I. Purkey* v. *William P. Barr*, No. 1:19-cv-3570 (D.D.C.), Dkt. 36.

Mr. Purkey was scheduled to be executed today, July 15, 2020, at 4:00 p.m. E.D.T.  However, in light of the district court's day-of-execution injunctions, the government is planning to conduct the execution no earlier than 7:00 p.m. E.D.T. today to allow additional time for the United States Court of Appeals for the D.C. Circuit and potentially the Supreme Court to conduct review.

Respectfully,

*s/Ashley A. Cheung*
ASHLEY A. CHEUNG
   Attorney, Appellate Staff
   Civil Division, Room 7261
   U.S. Department of Justice
   950 Pennsylvania Ave. NW
   Washington, DC 20530
   (202) 353-9018
   Ashley.Cheung@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on July 15, 2020, I caused the foregoing letter to be served upon all filing users through the Court's CM/ECF system. Electronic service will be effected by the Court's CM/ECF system.

ASHLEY A. CHEUNG
Attorney, Appellate Staff
Civil Division, Room 7261
U.S. Department of Justice
950 Pennsylvania Ave. NW
Washington, DC 20530
(202) 353-9018
Ashley.Cheung@usdoj.gov

|  |  |  |
|---|---|---|
| In the Matter of the Federal Bureau of Prisons' Execution Protocol Cases, | ) ) ) ) ) | |
| LEAD CASE: *Roane, et al. v. Barr* | ) | Case No. 19-mc-145 (TSC) |
| THIS DOCUMENT RELATES TO: | ) ) ) | |
| *Lee v. Barr, et al.*, 19-cv-2559 | ) ) | |
| *Purkey v. Barr, et al.*, 19-cv-3214 | ) ) | |
| *Nelson v. Barr, et al.*, 20-cv-557 | ) ) | |

## <u>MEMORANDUM OPINION</u>

After a hiatus in federal executions of over fifteen years, on July 25, 2019, the U.S. Department of Justice (DOJ) announced plans to execute five inmates who had been sentenced to death under the federal death penalty statute.[1] *See* Press Release, Dep't of Justice, Federal Government to Resume Capital Punishment After Nearly Two Decade Lapse (July 25, 2019), https://www.justice.gov/opa/pr/federal-government-resume-capital-punishment-after-nearly-two-decade-lapse. To implement these executions, the Federal Bureau of Prisons (BOP) adopted a new execution protocol: the 2019 Protocol. (ECF No. 39-1, Admin. R. at 1021–75.)

On November 20, 2019, the court preliminarily enjoined the executions of four inmates: Alfred Bourgeois, Daniel Lewis Lee, Dustin Lee Honken, and Wesley Ira Purkey. (ECF No. 50, Mem. Op. (2019 Order), at 15.) The court found that these four Plaintiffs had demonstrated a

---

[1] Plaintiffs Bourgeois, Mitchell, Lee, and Purkey were sentenced under the Federal Death Penalty Act, 18 U.S.C. §§ 3591–3599. Plaintiff Honken was sentenced under the Anti-Drug Abuse Act of 1988, 21 U.S.C. § 848(e).

likelihood of success on the merits of their claims that the 2019 Protocol violates the Federal

Death Penalty Act (FDPA), but the court did not rule on their other statutory and constitutional

claims. (*Id.* at 13–14.) In April of this year, a divided D.C. Circuit panel vacated the preliminary

injunction. *In re Fed. Bureau of Prisons' Execution Protocol Cases*, 955 F.3d 106, 113 (D.C.

Cir. 2020), *cert. denied sub nom. Bourgeois v. Barr*, No. 19-1348, 2020 WL 3492763 (June 29,

2020). That Court based its ruling solely on the Plaintiffs' claims under the FDPA and the APA,

and noted that "regardless of our disposition, several claims would remain open on remand."

*Execution Protocol Cases*, 955 F.3d at 113 (per curiam).

On June 15, 2020, the DOJ and BOP scheduled new execution dates for three of the four

Plaintiffs whose executions had been preliminarily enjoined by the 2019 Order: Lee on July 13,

2020, Purkey on July 15, 2020, Honken on July 17, 2020, and Keith Dwayne Nelson on August

28, 2020. (ECF No. 99, Defs. Notice Regarding Execution Dates.)

On July 13, 2020, the court preliminarily enjoined the executions of Lee, Purkey,

Honken, and Nelson. (ECF No. 135, Mem. Op. (2020 Order) at 22.) The court found that these

four Plaintiffs had demonstrated a likelihood of success on the merits of their claims that the

2019 Protocol is cruel and unusual in violation of the Eighth Amendment, but once again did not

rule on their other statutory and constitutional claims. (*Id.* at 18.) The D.C. Circuit declined to

stay or vacate the court's injunction, *see In re Fed. Bureau of Prisons' Execution Protocol

Cases*, No. 20-5199 (D.C. Cir. July 13, 2020), but the Supreme Court vacated the injunction

early in the morning of July 14, 2020. *Barr v. Lee*, No. 20A8, 2020 WL 3964985 (July 14, 2020)

(per curiam). Four justices dissented. *Id.* at *2–3. Hours later, Defendants executed Daniel

Lewis Lee.

Two more Plaintiffs are scheduled to be executed this week, and a third next month. Because these Plaintiffs are scheduled to be executed before their claims can be fully litigated, they have asked this court, pursuant to Federal Rule of Civil Procedure 65 and Local Rule 65.1, to preliminarily enjoin Defendants from executing them while they litigate their remaining claims.[2] (ECF No. 102, Pls. Mot. for Prelim. Inj.; *see also* ECF No. 144, Emergency Notice Requesting Ruling on Pending Mot.)

## I.  BACKGROUND

In 2005, three federal death row inmates sued, alleging that their executions were to be administered under an unlawful and unconstitutional execution protocol. *Roane v. Gonzales*, 1:05-cv-02337 (D.D.C.), ECF No. 1 ¶ 2.  The court preliminarily enjoined their executions. *Roane*, ECF No. 5.  Four other death row inmates intervened, and their executions were enjoined as well.  *See Roane*, ECF Nos. 23, 27, 36, 38, 67, and 68.  During this litigation, the government produced a 50-page document (2004 Main Protocol) outlining BOP execution procedures. *Roane*, ECF No. 179-3.  The government then produced two three-page addenda to the 2004 Main Protocol.  *See Roane*, ECF No. 177-3 (Addendum to Protocol, July 1, 2007) (the 2007 Addendum); ECF No. 177-1 (Addendum to Protocol, Aug. 1, 2008) (the 2008 Addendum).  In 2011 the DOJ announced that the BOP did not have the drugs it needed to implement the 2008 Addendum.  *See* Letter from Office of Attorney General to National Association of Attorneys General, (Mar. 4, 2011), https://files.deathpenaltyinfo.org/legacy/documents/2011.03.04.holder.

---

[2] On July 2, 2020, the Seventh Circuit temporarily stayed Purkey's execution. *Purkey v. United States*, No. 19-3318, 2020 WL 3603779 (7th Cir. July 2, 2020).  As of this filing, that stay is still in place.  Because the Seventh Circuit affirmed the district court's denial of Purkey's petition for writ of habeas corpus, and only temporarily stayed his execution "pending the completion of proceedings in the Seventh Circuit," however, this court finds it appropriate to preliminarily enjoin his execution as well as those of the other Plaintiffs.  *Id.* at *11.

letter.pdf. The government informed the court that the BOP "has decided to modify its lethal injection protocol but the protocol revisions have not yet been finalized." *Roane*, ECF No. 288 at 2. In response, the court stayed the *Roane* litigation.

No further action was taken in the cases for over seven years. On July 24, 2019, the DOJ announced a new addendum to the execution protocol, (Admin. R. at 874–78), replacing the three-drug protocol of the 2008 Addendum with a single drug: pentobarbital sodium. (*Id.* at 879–80.) The BOP also adopted a new protocol to replace the 2004 Main Protocol. (*Id.* at 1021–72.) The 2019 Protocol provides for three injections, the first two containing 2.5 grams of pentobarbital in 50 milliliters of diluent each, and the third containing 60 milliliters of a saline flush. (*Id.* at 880.) The 2019 Protocol makes no reference to the form or source of the drug, or measures of quality control, and its description of the intravenous administration of the drug simply provides that the Director or designee "shall determine the method of venous access" and that "[i]f peripheral venous access is utilized, two separate lines shall be inserted in separate locations and determined to be patent by qualified personnel." (*Id.*)

Following this announcement, the court held a status conference in *Roane* on August 15, 2019. (*See* Minute Entry, Aug. 15, 2019.) In addition to the *Roane* plaintiffs, the court heard from counsel for three other federal death row inmates, all of whom cited the need for additional discovery on the new protocol. (*See* ECF No. 12, Status Hr'g Tr.) The government indicated that it was unwilling to stay the executions, and the court bifurcated discovery and ordered Plaintiffs to complete 30(b)(6) depositions by February 28, 2020, and to file amended complaints by March 31, 2020. (*See* Minute Entry, Aug. 15, 2019.)

Four inmates with scheduled execution dates filed complaints or motions to intervene in the *Roane* action challenging the 2019 Protocol, and each subsequently moved to preliminarily

4

enjoin their executions.[3]  On November 20, 2019, the court granted the four Plaintiffs' motions

for preliminary injunction, finding that they had demonstrated a likelihood of success on their

claims that the 2019 Protocol exceeds statutory authority.  (2019 Order at 13, 15.)  The court did

not rule on Plaintiffs' other claims, including that the 2019 Protocol is arbitrary and capricious

under the Administrative Procedure Act (APA), that it violates the Food, Drug, and Cosmetic

Act (FDCA) and the Controlled Substances Act (CSA), that it violates Plaintiffs' right to counsel

in violation of the First, Fifth, and Sixth Amendments, and that it is cruel and unusual in

violation of the Eighth Amendment.  (*Id.* at 13.)  Following the court's order, three additional

death row inmates filed complaints under separate case numbers, which in turn were

consolidated with *Roane*.[4]  Defendants moved to stay the court's preliminary injunction, which

the court denied.  (*See* Minute Order, Nov. 22, 2019.)  The D.C. Circuit likewise denied

Defendants' motion to stay, *In re Fed. Bureau of Prisons' Execution Protocol Cases*, No. 19-

5322 (D.C. Cir. Dec. 2, 2019), as did the United States Supreme Court on December 6, 2019.

*Barr v. Roane*, 140 S. Ct. 353 (2019).  However, three Justices issued a statement indicating their

belief that Defendants were likely to prevail on the merits.  *Id.*

Defendants also filed an interlocutory appeal of the court's 2019 Order on November 21,

2019.  (*See* ECF No. 52.)  On April 7, 2020, the D.C. Circuit reversed.  *Execution Protocol*

---

[3] Lee filed his complaint on August 23, 2019 (*see Lee v. Barr*, 1:19-cv-02559 (D.D.C.), ECF No. 1), and his motion for a preliminary injunction on September 27, 2019.  (ECF No. 13, Lee Mot. for Prelim. Inj.)  On August 29, 2019, Bourgeois moved to preliminarily enjoin his execution. (ECF No. 2, Bourgeois Mot. for Prelim. Inj.)  Honken filed an unopposed motion to intervene in *Lee v. Barr*, which was granted.  (ECF No. 26, Honken Mot. to Intervene.)  He then moved for a preliminary injunction on November 5, 2019.  (ECF No. 29, Honken Mot. for Prelim. Inj.) Purkey filed a complaint and a motion for a preliminary injunction under a separate case number, 1:19-cv-03214, which was consolidated with *Roane*.  (ECF No. 34, Purkey Mot. for Prelim. Inj.)

[4] These plaintiffs are Norris G. Holder, Jr., 1:19-cv-3520; Brandon Bernard, 1:20-cv-474; and Keith Dwayne Nelson, 1:20-cv-557.

*Cases*, 955 F.3d at 108. Neither of the two Judges on the panel who voted to reverse agreed on the FDPA's statutory requirements but they nonetheless agreed that Plaintiffs were unlikely to prevail on the merits of their claims that the 2019 Protocol exceeds statutory authority. *Id.* at 112 (per curiam). The panel expressly declined to rule on Plaintiffs' remaining statutory and constitutional claims, as "the government did not seek immediate resolution of all the plaintiffs' claims" and the claims "were neither addressed by the district court nor fully briefed in this Court." *Id.* at 113. The Court of Appeals denied Plaintiffs' petition for rehearing en banc on May 15, 2020, and the Supreme Court denied Plaintiffs' application for a stay of the mandate and petition for a writ of certiorari on June 29, 2020. *Bourgeois*, 2020 WL 3492763. Meanwhile, Plaintiffs filed their Amended Complaint on June 1, 2020, (ECF No. 92, Am. Compl.), the same day Holder filed a separate supplemental complaint. (ECF No. 94, Holder Compl.)

Now, after the intervening litigation described above, *see*, *supra*, at 2, two Plaintiffs—Purkey and Honken—are scheduled to be executed this week, and the third, Nelson, next month. Plaintiffs request that the court rule on their remaining statutory and constitutional claims prior to those dates. (Emergency Notice Requesting Ruling on Pending Mot.)

## II.    ANALYSIS

The court's 2019 and 2020 Orders set forth the legal standard for considering a motion for a preliminary injunction, an "extraordinary remedy" requiring courts to assess four factors: (1) the likelihood of the plaintiff's success on the merits, (2) the threat of irreparable harm to the plaintiff absent an injunction, (3) the balance of equities, and (4) the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20, 24 (2008) (citations omitted); *John Doe Co. v. Consumer Fin. Prot. Bureau,* 849 F.3d 1129, 1131 (D.C. Cir. 2017). The D.C. Circuit has

6

traditionally evaluated claims for injunctive relief on a sliding scale, such that "a strong showing on one factor could make up for a weaker showing on another." *Sherley v. Sebelius,* 644 F.3d 388, 392 (D.C. Cir. 2011). It has been suggested, however, that a movant's showing regarding success on the merits "is an independent, free-standing requirement for a preliminary injunction." *Id.* at 393 (quoting *Davis v. Pension Benefit Guar. Corp.*, 571 F.3d 1288, 1296 (D.C. Cir. 2009) (Kavanaugh, J., concurring)).

A.      **Likelihood of Success on the Merits**

Plaintiffs contend that the 2019 Protocol (1) is arbitrary and capricious under the APA; (2) violates the CSA and FDCA; and (3) deprives Plaintiffs of their right to access the courts and counsel under the First, Fifth, and Sixth Amendments. (Pls. Mot. for Prelim. Inj. at 1.) The court addresses Plaintiffs' likelihood of success on the merits on each of these claims in turn. Although most of their claims are without merit, the court finds that Plaintiffs' have demonstrated a likelihood of success on their FDCA claims.

1.      Arbitrary and Capricious

As a preliminary matter, the court agrees with Plaintiffs that review of the 2019 Protocol is not cabined by the D.C. Circuit's holding that the Protocol is a procedural rule. Regardless of whether the APA's notice-and-comment provisions apply, the arbitrary and capricious standard is "among the most notable" constraints on agency decisionmaking, and the court must consider it. *Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 106 (2015). Likewise, the court must be able to consider evidence outside the administrative record in order to determine whether the agency considered all relevant factors. *Level the Playing Field v. FEC*, 381 F. Supp. 3d 78, 89 (D.D.C. 2019), *aff'd*, 961 F.3d 462 (D.C. Cir. 2020).

On the other hand, in reviewing an agency action under the arbitrary and capricious standard, the court must not "substitute its own judgment for that of the agency." *Mayo v. Reynolds*, 875 F.3d 11, 19–20 (D.C. Cir. 2017) (citation omitted). Its task is to ensure, after considering the relevant factors, that Defendants acted "within the bounds of reasoned decisionmaking." *Balt. Gas and Elec. Co. v. Nat. Res. Def. Council, Inc.*, 462 U.S. 87, 104 (1983). In other words, the court must decide whether there has been clear error by the agency. *See id.* at 96; *Marsh v. Oregon Nat. Res. Council*, 490 U.S. 360, (1989) ("[I]n making the factual inquiry concerning whether an agency decision was 'arbitrary or capricious,' the reviewing court 'must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment.'") (quoting *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971).)

Plaintiffs argue that Defendants failed to consider three relevant factors before finalizing the 2019 Protocol: (1) the risk of flash pulmonary edema during the execution process, (2) the risk of faulty IV insertion during the execution process, and (3) the risks associated with compounding pharmacies in acquiring pentobarbital. None of these rises to the level of arbitrariness or capriciousness for an APA violation.

Plaintiffs convincingly show that, in developing the 2019 Protocol, Defendants did not consider the risk of flash pulmonary edema. (*See* ECF No. 118, Pls. Reply at 5.) This court has previously outlined the "excruciating suffering" associated with pulmonary edema. (*See* 2020 Order at 9–12.) However, the court is bound by the Supreme Court's holding that, given Defendants' contention that pulmonary edema occurs post-mortem or after the inmate has been rendered insensate, this risk does not justify last-minute judicial intervention. *Barr v. Lee*, 2020 WL 3964985, at *2.

Plaintiffs next argue that Defendants failed to consider the risk of faulty IV placement. The evidence before the court suggests that Defendants did consider the risks of faulty IV placement, at least enough to survive the arbitrary and capricious standard. Defendants studied the "after action report" of the botched execution of Clayton Lockett in Oklahoma, in 2014, where faulty IV placement caused Lockett to regain consciousness. (Admin. R. at 931.) Defendants also considered the risks in their consultation with experts (Admin. R. at 442–43), and in their review of the case law. (*See* Admin. R. at 108–400.) The court is sympathetic to Plaintiffs' dissatisfaction with the guidance provided by the 2019 Protocol, particularly given the botched executions of Lockett and others, and the additional difficulties associated with the ongoing COVID-19 crisis. But, based on the record before it, the court finds that Defendants adequately considered the risks of faulty IV placement in designing the 2019 Protocol.

Finally, while the record points to a number of concerns with the 2019 Protocol's use of a compounded form of pentobarbital, these concerns do not rise to the level of an APA violation. Defendants' reliance on what they concede is a non-binding memorandum to assure the court that it will use a compounding pharmacy that complies with the FDA's Current Good Manufacturing Practice requirements is troubling. (*See* ECF No. 113, Defs. Opp. at 31.) Defendants' use of compounding pharmacies, however, must be viewed in light of the Supreme Court's recognition that the government "can't be faulted for failing to use lethal injection drugs that it's unable to procure through good-faith efforts." *Bucklew v. Precythe*, 139 S. Ct. 1112, 1125 (2019) (citing *Glossip v. Gross*, 135 S. Ct. 2726, 2737–38 (2015). While Plaintiffs are correct to highlight the risks of using compounding pharmacies, the Supreme Court has approved the use of a compounded form of pentobarbital where domestic supplies were unavailable, and Defendants' decision to do so was not arbitrary or capricious.

Plaintiffs have thus failed to demonstrate a likelihood of success on the merits of their claims that the 2019 Protocol is arbitrary and capricious under the APA.

2.        CSA and FDCA

Plaintiffs' CSA and FDCA claims are similar, as both contend that the 2019 Protocol is in violation of both statutes because the Protocol does not provide for Defendants to obtain a valid written prescription for the pentobarbital it will use to execute Plaintiffs.  *See* 21 U.S.C. § 829(a) (requiring valid prescription, issued for a legitimate medical purpose, in dispensing any controlled substance to an "ultimate user"); 21 U.S.C. § 353(b)(1) (requiring valid written or oral prescription in dispensing any controlled substance).  *See also* 21 C.F.R. § 1308.12 (listing pentobarbital as a Schedule II controlled substance).

Plaintiffs are not barred by either statute from bringing a private claim.  Defendants are correct that the CSA and FDCA are primarily criminal statutes, the enforcement of which is the "nearly exclusive" authority of the United States.  *POM Wonderful LLC v. Coca-Cola Co.*, 573 U.S. 102, 109 (2014).  Plaintiffs convincingly counter, however, that they do not seek to supplant the government as the enforcer of these statutes against a third party, but rather simply seek to require the government to comply with the statutes' prescription dispensation requirements.  (Pls. Reply at 17–18.)  In other words, while they allege that Defendants failed to comply with the CSA and FDCA, it would be more accurate to describe their claims as being brought under the APA for agency action that is "not in accordance with law"—a violation for which the APA does provide a private right of action.  5 U.S.C. §§ 702, 706(2)(A).  *See also Chrysler Corp. v. Brown*, 441 U.S. 281, 316–18 (1979) (finding government violations of Trade Secrets Act reviewable even where Act contained no private right of action).

i.    *CSA*

A plain reading of the statute indicates that Plaintiffs are correct that the CSA applies to the government's lethal injection procedures. Defendants contend that the CSA does not apply because Plaintiffs are not being "dispensed" pentobarbital, and Plaintiffs are not "patients." (Defs. Opp. at 32–33.) Plaintiffs, however, have amassed a factual record indicating that the Drug Enforcement Agency (DEA) previously advised state officials that the lethal injection process *was* considered "dispensing" the lethal drug, and that licensed professionals *were* required to "prescribe, administer, and dispense" said drugs. (*See* ECF No. 102-6, Decl. of Alan Schoenfeld Ex. 5; ECF No. 102-7, Schoenfeld Decl. Ex. 6.) Defendants' rebuttal that these documents are insufficiently authenticated is not a reason to rush Plaintiffs' executions, but rather a reason to halt them to permit Defendants to challenge their veracity.

However, Defendants also point to *Gonzales v. Oregon*, which, they contend, clearly establishes that the CSA does not apply in the lethal injection context. 546 U.S. 243, 272–74 (2006). In that case the Supreme Court held that the CSA is primarily "a statute combating recreational drug use," and must be read in light of that statutory purpose. *Id.* at 272. Thus, "the prescription requirement is better understood as a provision that ensures patients use controlled substances under the supervision of a doctor so as to prevent addiction and recreational abuse. . . . To read prescriptions for assisted suicide as constituting 'drug abuse' under the CSA is discordant with the phrase's consistent use throughout the statute." *Id.* at 274. Given this holding, dispensation of lethal injection drugs to an inmate would not be covered by the Act. Indeed, Plaintiffs' reply brief does not address *Gonzales*, and they have failed to demonstrate a likelihood of success on the merits on this claim.

ii.     *FDCA*

The court's analysis of Plaintiffs' FDCA claims is similar to that of their CSA claims, but here, Plaintiffs are on firmer footing. It is true that the Office of Legal Counsel has previously opined that the FDCA does not apply in the lethal-injection context. *See Whether the Food & Drug Admin. Has Jurisdiction over Articles Intended for Use in Lawful Executions*, 2019 WL 2235666, at *1 (May 3, 2019). This Circuit, however, has found otherwise. In *Beaty v. FDA*, the Court held that lethal injection drugs are "drugs" under the FDCA, and that death-sentenced individuals are permitted to assert violations of the FDCA. 853 F. Supp. 2d 30, 34, 37–42 (D.D.C. 2012), *aff'd in relevant part sub nom. Cook v. FDA*, 733 F.3d 1 (D.C. Cir. 2013).

Defendants elsewhere argue that, because lethal injection drugs are intended to kill, they could not possibly be regulated by laws intended to ensure that a drug is "safe and effective for its intended use." *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000). Because violations of the FDCA carry "the risk that the drug[s] will not function as intended," however, the statute must apply in the lethal-injection context, because a lethal injection drug that does not function as intended may "result in conscious suffocation, pain, and cardiac arrest." *Beaty*, 853 F. Supp. 2d at 37. This is especially so where, as here, Defendants have justified the 2019 Protocol on the grounds that pentobarbital will render inmates insensate during the execution process. Where the government argues that a lethal injection drug is legally and constitutionally permissible because it will ensure a "humane" death, it cannot then disclaim a responsibility to comply with federal statutes that exist in order to ensure that the drugs operate humanely.

Defendants also raise a rather convoluted argument regarding the FDCA's restrictions on "outsourcing facilities." Essentially, they contend that because the FDCA allows certain

12

outsourcing facilities to compound pentobarbital in large quantities as "office stock" without obtaining a valid prescription for an identified patient, Defendants are similarly allowed to use outsourcing facilities, because they are not compounding large quantities for office stock, nor are inmates "patients." *See Athenex Inc. v. Azar*, 397 F. Supp. 3d 56, 59 (D.D.C. 2019). For the same reasons stated in its analysis of Plaintiffs' CSA claims, the court finds that Plaintiffs are "patients" for purposes of the FDCA. Moreover, the "office stock" language comes from the *Athenex* opinion, not the statute itself, which clearly states that the FDCA regulations apply to all outsourcing facilities, even those that are not responsible for obtaining the required prescriptions. 21 U.S.C. § 353(b)(d)(4). The court therefore declines to so drastically expand *Athenex*'s holding.

The D.C. Circuit's binding precedent, combined with Plaintiffs' plain reading of the statute, establishes that the 2019 Protocol is likely in violation of the FDCA. Plaintiffs have thus demonstrated a likelihood of success on the merits of their FDCA claims.

> 3. Access to the Courts and Right to Counsel

Finally, Plaintiffs argue that the 2019 Protocol violates their right to counsel. At its core, Plaintiffs' claim is that, because Plaintiffs have a constitutional right to counsel in order to assert violations of their fundamental rights, they also have the right to have their counsel supervise the execution for possible maladministration in violation of the Eighth Amendment. (*See* Pls. Reply at 18.) The proper question, however, is whether the 2019 Protocol burdens this right.

The 2019 Protocol permits up to two defense attorneys to be present as witnesses during the execution (Admin. R. at 1024), and while it does not permit witnesses to bring their cell phones into the witness room, an attorney "may request" the use of their phone if "legitimate

need arises," and "will have immediate access to [a phone] outside of the witness room." (ECF No. 111-3, Decl. of Tom Watson, at 3.)

Plaintiffs contend that the 2019 Protocol impermissibly prohibits counsel from viewing the setting of the IVs, from communicating with Plaintiffs during the execution, and from having a quick and easy means of communicating with the court. (Pls. Mot. for Prelim. Inj. at 35.) While these are all serious concerns, Plaintiffs fail to demonstrate a likelihood of success on the merits of showing that these requests are constitutionally mandated. As Defendants note, the cases on which Plaintiffs rely are both out-of-circuit and factually distinct. *See, e.g.*, *Cooey v. Strickland*, No. 04-cv-1156, 2011 WL 320166, at *6 (S.D. Ohio Jan. 28, 2011) (declining to decide whether the Constitution mandated a right for counsel to be present at the execution where Ohio law already permitted counsel to be present). Plaintiffs' suggestion that the court adopt Justice Thomas' concurrence in *Lewis v. Casey*, in which he wrote that the Due Process Clause requires a right to access the courts to assert violations of fundamental rights, is compelling. 518 U.S. 343, 380–82 (1996) (Thomas, J., concurring). But the court cannot find that Plaintiffs have demonstrated a likelihood of success on the merits of a claim that relies on the concurrence of a single Justice.

Finally, Plaintiffs raise a number of arguments regarding the impact of the COVID-19 crisis on Plaintiffs' access to counsel prior to and during the execution process. These are very serious concerns. However, Defendants correctly note that these problems are not the result of the 2019 Protocol, or indeed any of Defendants' actions, but of the pandemic itself. (Defs. Opp. at 42.) Plaintiffs' objections are understandable, but closely resemble the pandemic-related claims brought by spiritual advisors and family members in separate litigation—claims which have thus far been rejected by the courts. *See Hartkemeyer v. Barr*, No. 20-cv-336 (S.D. Ind.

14

July 14, 2020), ECF No. 84 (denying preliminary injunction based on APA and Religious Freedom Restoration Act claims), *appeal filed*, No. 20-2262 (7th Cir. July 14, 2020); *Peterson v. Barr*, No. 20-2252, 2020 WL 3955951 (7th Cir. July 12, 2020) (vacating preliminary injunction based on APA claims).  Given these and other recent developments, the likelihood of success on Plaintiffs' constitutional claims "seems vanishingly small."  *Hartkemeyer*, No. 20-cv-336, ECF No. 84 at 5.

### B.  <u>Irreparable Harm</u>

The court's analysis of irreparable harm is unchanged from its 2019 and 2020 Orders.  In order to prevail on a request for preliminary injunction, irreparable harm "must be certain and great, actual and not theoretical, and so imminent that there is a clear and present need for equitable relief to prevent irreparable harm," and it "must be beyond remediation."  *League of Women Voters of U.S. v. Newby,* 838 F.3d 1, 7–8 (D.C. Cir. 2016) (citing *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006)) (internal quotation marks and brackets omitted).  Here, without injunctive relief, Plaintiffs would be unable to pursue their remaining claims, including the claims that the method of planned execution under the 2019 Protocol is cruel and unusual in violation of the Eighth Amendment, and would therefore be executed under a procedure likely to be unconstitutional.  This harm is manifestly irreparable.  *See also Wainwright v. Booker*, 473 U.S. 935, 935n.1 (1985) (Powell, J., concurring) (finding irreparable harm "necessarily present in capital cases").

At no point in this litigation have Defendants disputed that Plaintiffs will suffer irreparable harm if they are executed before their claims can be fully adjudicated.  Nor has the D.C. Circuit on appeal, and nor has the Supreme Court, even as it vacated the court's 2020 Order on the basis that Plaintiffs had not demonstrated a likelihood of success on the merits of their

Eighth Amendment claims.  Based on the record before it, the court finds that Plaintiffs have shown that absent injunctive relief, they will suffer the irreparable harm of being executed before their claims can be fully adjudicated.

**C.**     **Balance of Equities**

Defendants argue that if the court preliminarily enjoins the 2019 Protocol, they will suffer the harm of having to delay the scheduled execution dates.  (*See* Defs. Opp. at 57.)  Defendants' interest in the finality of criminal proceedings, especially at the last minute, is compelling. *Calderon v. Thompson*, 523 U.S. 538, 556 (1998).  The court once again notes, however, that Defendants waited eight years to establish a new protocol for federal executions.  This delay undermines their arguments regarding the urgency and weight of that interest.

Indeed, where the Supreme Court has been sympathetic to the government's need for finality in capital cases, it has generally been in cases where plaintiffs waited until the last minute to bring claims that could have been brought earlier, or engaged in a clear "attempt at manipulation" of the judicial process. *Bucklew*, 139 S. Ct. at 1134 (quoting *Hill v. McDonough*, 547 U.S. 573, 584 (2006)).  Here, however, two of the three Plaintiffs filed their complaints shortly after the DOJ announced the 2019 Protocol, months before their initially scheduled executions, and Nelson filed his complaint before Defendants even announced his execution date.  Plaintiffs are not raising new claims that they could have brought in their initial complaints, but rather renewing the Eighth Amendment arguments made in their initial motions.

That this order comes at the last minute is unfortunate, but it is no fault of Plaintiffs. Defendants chose to schedule Plaintiffs' executions knowing that their remaining claims were still pending.  Defendants further chose to schedule three federal executions, the first in over fifteen years, for the same week, knowing that Plaintiffs' claims raised a number of "novel and

16

difficult" questions, both in this and other actions.  *See Execution Protocol Cases*, No. 20-5199 (D.C. Cir. July 13, 2020).  Furthermore, once the Supreme Court vacated this court's preliminary injunction, Defendants chose to execute Lee, beginning the process before dawn, knowing that Lee had pending claims before the court that could not possibly be resolved prior to his execution, including a claim that this court now finds is likely to succeed on the merits.  This court agrees that "last-minute stays should be the extreme exception," *Bucklew*, 139 S. Ct. at 1134, but here, it is Defendants' rush to execute Plaintiffs that has led to this extreme exception.

Given this background, the court finds that the potential harm to the government caused by a delayed execution is not substantial, and is far outweighed by the irreparable harm Plaintiffs would face absent an injunction.

### D.    Public Interest

As noted in the court's 2019 and 2020 Orders, the public interest is not served by executing individuals before they have had the opportunity to avail themselves of the legal process to challenge the legality of their executions.  *See Barr v. Roane*, 140 S. Ct. at 353 (Op. of Alito, J., respecting denial of stay or vacatur) (finding it preferable for plaintiffs' claims to be heard on the merits "in light of what is at stake").  *See also Purkey v. United States*, No. 19-3318, 2020 WL 3603779, at *11 (7th Cir. July 2, 2020) ("Just because the death penalty is involved is no reason to take shortcuts—indeed, it is a reason not to do so."); *Harris v. Johnson*, 323 F. Supp. 2d 797, 810 (S.D. Tex. 2004) ("Confidence in the humane application of the governing laws . . . must be in the public's interest.").  Accordingly, the court finds that the public interest is served by preliminarily enjoining Plaintiffs' executions because it will allow judicial review of whether the United States Government's planned execution protocol complies with federal law, and to ensure that it does so in the future.

### III. CONCLUSION

The court finds that at least one of Plaintiffs' claims has a likelihood of success on the merits, and that absent a preliminary injunction, Plaintiffs will suffer irreparable harm. It further finds that the likely harm that Plaintiffs would suffer if the court does not grant injunctive relief far outweighs any potential harm to Defendants. Finally, because the public is not served by short-circuiting legitimate judicial process, and is greatly served by attempting to ensure that the most serious punishment is imposed in accordance with federal law, the court finds that it is in the public interest to issue a preliminary injunction. Accordingly, having reviewed the parties' filings, the record, and the relevant case law, and for the reasons set forth above, the court will GRANT Plaintiffs' Motion for a Preliminary Injunction. A corresponding order will be issued simultaneously.

Date: July 15, 2020

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| In the Matter of the<br>Federal Bureau of Prisons' Execution<br>Protocol Cases,<br><br>LEAD CASE: *Roane, et al. v. Barr*<br><br>THIS DOCUMENT RELATES TO:<br><br>*Lee v. Barr, et al.*, 19-cv-2559<br><br>*Purkey v. Barr, et al.*, 19-cv-3214<br><br>*Nelson v. Barr, et al.*, 20-cv-557 | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 19-mc-145 (TSC) |

## ORDER

For the reasons set forth in the accompanying Memorandum Opinion, the court hereby

GRANTS Plaintiffs' Motion for a Preliminary Injunction (ECF No. 102).

It is hereby ORDERED that Defendants (along with their respective successors in office,

officers, agents, servants, employees, attorneys, and anyone acting in concert with them) are

enjoined from executing Plaintiffs Wesley Ira Purkey, Dustin Lee Honken, and Keith Dwayne

Nelson until further order of this court.

Date: July 15, 2020

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge

1

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| WESLEY I. PURKEY, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 1:19-cv-3570 (TSC) |
| WILLIAM P. BARR, *et al.*, | ) ) ) | |
| Defendants. | ) ) ) | |

**ORDER**

Plaintiff Wesley Ira Purkey is 68 years old.  As a child, he experienced repeated sexual abuse and molestation by those charged with caring for him.  (ECF No. 1, Compl., ¶ 20.)  As a young man, he suffered multiple traumatic brain injuries—first in 1968, when he was 16, and again in 1972 and 1976, when he was 20 and 24 respectively.  (ECF No. 1-1, Agharkar Report, at 22.)  At 14, he was first examined for possible brain damage, and at 18, he was diagnosed with schizophrenic reaction, schizoaffective disorder, and depression superimposed upon a pre-existing antisocial personality.  (*Id.* at 5.)  At 68, he suffers from progressive dementia, schizophrenia, complex-post traumatic stress disorder, and severe mental illness.  (Compl., ¶¶ 14, 21, 24.)

Defendants plan to execute him today, July 15, 2020.  (ECF No. 22.)

Purkey seeks to enjoin his execution on two grounds: that he is not currently competent to be executed under *Ford v. Wainwright*, 477 U.S. 399 (1986) and the Eighth Amendment, and that Attorney General William Barr and Bureau of Prisons Director Michael Carvajal have not afforded him due process in connection with this Eighth Amendment claim.  (*See* Compl.,

1

¶¶ 109–119.)  Defendants move to dismiss Plaintiff's claims for lack of subject matter

jurisdiction[1] and failure to state a claim.  (ECF No. 18, Defs. Mot. to Dismiss.)  In the

alternative, Defendants move to transfer all claims that are not dismissed to the United States

District Court for the Southern District of Indiana.  (*Id*., at 33–39.)  For the reasons set forth

below, the court will DENY Defendants' Motion to Dismiss, GRANT Plaintiff's motion for a

preliminary injunction, and ORDER Plaintiff to show cause why this case should not be

transferred.

Should the timing of this ruling be raised in subsequent litigation, the court notes that

though Defendants have accused the court of "abusive delay," *Barr v. Lee*, No. 20A8 (July 14,

2020), App. for a Stay or Vacatur at 6–7, the court's sole responsibility is to endeavor to address,

thoroughly and promptly, the claims of the four individuals whose execution dates were

announced by the Government only one month before they were to occur.  The speed with which

the government seeks to carry out these executions, and the Supreme Court's prioritization of

that pace over additional legal process, makes it considerably more likely that injunctions may

issue at the last minute, despite the efforts of Plaintiffs' counsel to raise, and the court to

adjudicate, the claims in a timely fashion.

## I.      BACKGROUND

After a hiatus in federal executions of over fifteen years, on July 25, 2019, the U.S.

Department of Justice (DOJ) announced plans to execute five inmates who had been sentenced to

death under the federal death penalty statute.  *See* Press Release, Dep't of Justice, Federal

---

[1] At the time Defendants moved to dismiss, Plaintiff's execution date had passed, and a new date
had not been scheduled.  (Defs. Mot. to Dismiss, at 12.)  Because an execution date has since
been scheduled, the court need not address Defendants' claim that because there was no pending
execution, the court lacked subject matter jurisdiction.

Government to Resume Capital Punishment After Nearly Two Decade Lapse (July 25, 2019), https://www.justice.gov/opa/pr/federal-government-resume-capital-punishment-after-nearly-two-decade-lapse.  To implement these executions, the Federal Bureau of Prisons (BOP) adopted a new execution protocol: the 2019 Protocol.  *See In re Fed. Bureau of Prisons' Execution Protocol Cases*, No. 19-mc-145 (D.D.C. November 13, 2019), ECF No. 39-1, at 1021–75.

On November 20, 2019, the court preliminarily enjoined the executions of four inmates: Alfred Bourgeois, Daniel Lewis Lee, Dustin Lee Honken, and Wesley Ira Purkey.  *See id*., ECF No. 50, at 15.  The court found that these Plaintiffs had demonstrated a likelihood of success on the merits of their claims that the 2019 Protocol violates the Federal Death Penalty Act (FDPA), but the court did not rule on their other statutory and constitutional claims.  *Id*., at 13–14.  In April of this year, a divided D.C. Circuit panel vacated the preliminary injunction.  *In re Fed. Bureau of Prisons' Execution Protocol Cases*, 955 F.3d 106, 113 (D.C. Cir. 2020), cert. denied sub nom. *Bourgeois v. Barr*, No. 19-1348, 2020 WL 3492763 (June 29, 2020).  The Court based its ruling solely on Plaintiffs' FDPA and APA claims, and noted that "regardless of our disposition, several claims would remain open on remand."  *Execution Protocol Cases*, 955 F.3d at 113 (per curiam).

On June 15, 2020, the DOJ and BOP scheduled a new execution date for Purkey—July 15, 2020.  On July 2, 2020, the Seventh Circuit stayed Purkey's execution, and at the time of this filing, that stay remains in place.  *Purkey v. United States*, No. 19-3318, 2020 WL 3603779 (7th Cir. July 2, 2020).  This court also preliminarily enjoined Purkey's execution, among others, on the grounds that the manner of execution violates the Eighth Amendment.  *See In re Fed. Bureau of Prisons' Execution Protocol Cases*, No. 19-mc-145 (D.D.C. July 13, 2020), ECF No. 136.  The government sought a stay of the injunction at the D.C. Circuit, which was denied.  *See In re*

3

*Fed. Bureau of Prisons' Execution Protocol Cases*, No. 20-5199 (D.C. Cir. July 13, 2020).

Defendants simultaneously sought a stay of the injunction at the United States Supreme Court,

which the Court granted, allowing Mr. Lee to be executed on July 14, 2020.  *See Barr v. Lee*, No.

20A8, 2020 WL 3964985 (July 14, 2020) (per curiam).  The Supreme Court held that Plaintiffs

had "not established that they are likely to succeed on the merits of their Eighth Amendment

claim."  *Id.* at *1–2.  Four Justices dissented.  *Id.* at *2–3.

## II.      LEGAL STANDARDS

### A. <u>Motion to Dismiss</u>

A motion to dismiss under Rule 12(b)(6) for failure to state a claim tests the legal

sufficiency of a complaint.  *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).  The court

does not assess the truth of what is asserted nor "whether a plaintiff has any evidence to back up

what is in the complaint."  *Id.* (citation omitted).  "To survive a motion to dismiss, a complaint

must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible

on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation

omitted).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for

more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (citation omitted).

"Factual allegations must be enough to raise a right to relief above the speculative level" and

move plaintiff's claims "across the line from conceivable to plausible."  *Bell Atl. Corp. v.

Twombly*, 550 U.S. 554, 555, 570 (2007).  Facts that are "merely consistent" with a defendant's

liability do not meet the plausibility standard.  *Iqbal*, 556 U.S. at 678 (citation omitted).

The court presumes the truth of a plaintiff's factual allegations, *see Iqbal*, 556 U.S. at

679, and construes the complaint "in favor of the plaintiff, who must be granted the benefit of all

inferences that can be derived from the facts alleged."  *Hettinga v. United States*, 677 F.3d 471,

476 (D.C. Cir. 2012) (citing *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979).).  This

presumption does not apply, however, to a "legal conclusion couched as a factual allegation."

*Iqbal*, 556 U.S. at 678; *see Ralls Corp. v. Comm. on Foreign Inv. in U.S.*, 758 F.3d 296, 315

(D.C. Cir. 2014) (the court "do[es] not accept as true . . . the plaintiff's legal conclusions or

inferences that are unsupported by the facts alleged.").

B.  **Preliminary Injunction**

A preliminary injunction is an "extraordinary remedy" that is "never awarded as of

right."  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (citing *Munaf v. Geren*, 553

U.S. 674, 689–90 (2008)).  Courts consider four factors on a motion for a preliminary injunction:

(1) the likelihood of plaintiff's success on the merits, (2) the threat of irreparable harm to the

plaintiff absent an injunction, (3) the balance of equities, and (4) the public interest.  *Id.* at 20

(citations omitted); *John Doe Co. v. Consumer Fin. Prot. Bureau*, 849 F.3d 1129, 1131 (D.C.

Cir. 2017).  When the government is the opposing party, as is the case here, the third and fourth

factors merge.  *See Nken v. Holder*, 556 U.S. 418 (2009).

The D.C. Circuit has traditionally evaluated claims for injunctive relief on a sliding scale,

such that "a strong showing on one factor could make up for a weaker showing on another."

*Sherley v. Sebelius*, 644 F.3d 388, 392 (D.C. Cir. 2011).  It has been suggested, however, that a

movant's showing regarding success on the merits "is an independent, free-standing requirement

for a preliminary injunction."  *Id.* at 393 (quoting *Davis v. Pension Ben. Guar. Corp.*, 571 F.3d

1288, 1296 (D.C. Cir. 2009) (Kavanaugh, J., concurring)).

### III.      ANALYSIS

**A. <u>Motion to Dismiss</u>**

    1. <u>28 U.S.C. § 2241</u>

Defendant contends that Plaintiff raises "core habeas" claims that "must be brought by an action for a writ of habeas corpus under the statute authorizing that writ." *Hill v. McDonough*, 547 U.S. 573, 576 (2006).

    *i.   Preemption*

"Federal law opens two main avenues to relief on complaints related to imprisonment," a petition for habeas corpus or a claim under 42 U.S.C. § 1983. *Muhammad v. Close*, 540 U.S. 749, 750 (2004). However, when a claim falls within the "core" of habeas, that claim cannot be brought under section 1983, but must instead "yield to the more specific federal habeas statute." *Nelson v. Campbell,* 541 U.S. 637, 643 (2004). Here, Plaintiff opens a third avenue by seeking equitable relief directly under the Constitution, (Compl., ¶ 11), but if that claim is within the "core" of habeas it must also "yield to the more specific federal habeas statute." *See Nelson*, 541 U.S. at 643.

In *Seminole Tribe of Fla. v. Florida*, the Court held: "Where Congress has created a remedial scheme for the enforcement of a particular federal right, we have, in suits against federal officers, refused to supplement that scheme with one created by the judiciary." 517 U.S. 44, 74 (1996) (citing *Schweiker v. Chilicky*, 487 U.S. 412, 423 (1988)). In the habeas corpus context, Congress has provided a remedial scheme under section 2241. Accordingly, the Court in *Preiser v. Rodriguez* found that it would "wholly frustrate explicit congressional intent" if a plaintiff could avoid federal habeas corpus laws "by the simple expedient of putting a different label on their pleadings." 411 U.S. 475, 489–490 (1973). Consistent with Supreme Court

precedent and congressional intent, this court finds that to the extent Plaintiff's claims are within the "core" of habeas, they must be brought under 28 U.S.C. § 2241.

### ii.   Core Habeas

A plaintiff's claims "challenging the fact of his conviction or the duration of his sentence" fall within the "core" of habeas corpus. *Nelson*, 541 U.S. at 643 (citing *Preiser*, 411 U.S. at 489). In the death penalty context, the criterion for a core habeas claim is whether "a grant of relief to the inmate would necessarily bar the execution." *Hill*, 547 U.S. at 583 (2006). A claim is not core habeas when injunctive relief would not challenge the sentence itself and "the inmate appear[s] willing to concede the existence of an acceptable alternative." *See id.* at 579 (citing *Nelson*, 541 U.S. at 645–646).

Plaintiff makes two claims for relief under *Ford*: that his execution would violate the Eighth Amendment because he is currently incompetent, and that executing him without providing a hearing to determine his competency would violate the Eighth Amendment and the Due Process Clause of the Fifth Amendment. (Compl., ¶¶ 108–115.)

Under *Ford*, when a plaintiff claims incompetence, "the only question raised is not *whether*, but *when*, his execution may take place." *Ford*, 477 U.S. at 425 (emphasis in original) (Powell, J., concurring); *see also Panetti v. Quarterman*, 551 U.S. 930, 949 (2007) (finding that Justice Powell's concurring opinion controls procedure for *Ford* claims). This temporal question is distinct from "the antecedent question whether petitioner should be executed at all." *Ford*, 477 U.S. at 425 (Powell, J., concurring). In fact, Justice Powell noted that incompetence may be temporary, and that a person may be returned to competency in order to carry out his sentence. *See id.* at n.5.

Under this analysis, neither of Plaintiff's *Ford* claims is a core habeas claim. The first claim is not core habeas because success will not necessarily bar his execution. As *Ford* makes clear, a claim of incompetence does not affect whether a plaintiff should be executed, but rather when execution would be appropriate. *See* 477 U.S. at 425 (Powell, J., concurring). Plaintiff argues that he should be executed when he is competent, not that his execution should be permanently enjoined. (ECF No. 20, Pl. Opp., at 15.) Therefore, his claim falls outside the core of habeas because it does not seek to bar his execution or challenge his sentence. Instead, success on this claim would result in a temporary injunction lasting until Plaintiff's competency is restored. (*See id*., at 16.) In acknowledging that he may be rendered competent, Plaintiff appears to concede that an acceptable alternative exists, namely that his sentence can be carried out when he is competent. (*See id*.)

The second claim is not a core habeas claim because, as the Supreme Court stated in *Hill*, a claim is not core habeas when it seeks only to enjoin the intended manner of execution and "does not challenge the [execution] sentence as a general matter." 547 U.S. at 580. Plaintiff's second claim challenges the manner of his execution by arguing that due process entitles him to a competency hearing before he can be executed. (Compl., ¶ 119.) Success on this claim would not challenge his death sentence but would only provide him a competency hearing. Again, Plaintiff appears to concede that there is an acceptable alternative—his execution can occur after he is found competent. (Pl. Opp., at 16.)

2. Jurisdiction

Because neither of Plaintiff's claims are core habeas claims, this court has jurisdiction to hear them. A claim that falls outside of the core of habeas corpus does not need to be brought pursuant to section 2241. *Nelson*, 541 U.S. at 643 ("[C]onstitutional claims that merely

challenge the conditions of a prisoner's confinement, whether the inmate seeks monetary or injunctive relief, fall outside of that core and may be brought pursuant to § 1983 in the first instance.")  Plaintiff alleges that if he were to be executed as the government plans, his rights to Due Process under the Eighth and Fifth Amendments would be violated.  (Compl., ¶ 119.) Because this claim is of constitutional dimension and falls outside of the core of habeas, this court is satisfied that subject matter jurisdiction is appropriate under 28 U.S.C. § 1331.  *See Bell v. Hood*, 327 U.S. 678, 681–83 (1946) (holding that federal question jurisdiction is appropriate where a plaintiff brings claims directly under the Constitution and those claims are neither made solely for the purpose of obtaining jurisdiction nor insubstantial and frivolous).

Even if Plaintiff's claims were core habeas, this court would still have jurisdiction.  This is because the jurisdictional requirement that habeas petitioners file in the district of confinement, *see Rumsfeld v. Padilla*, 542 U.S. 426, 447, (2004), "is best understood as a question of personal jurisdiction or venue" not a question of subject matter jurisdiction.  *Id.* at 451 (Kennedy, J., concurring).  Therefore, the requirement "can be waived by the Government," *id.* at 452; and in this case, it was waived.  Fed. R. Civ. P. 12(h)(1)(A) provides that a defense listed in Fed. R. Civ. P. 12(b)(2)–(5) is waived when, as here, it is not raised in a motion to dismiss.  (*See, e.g.*, Defs. Mot. to Dismiss, at 12–21, 33; ECF No. 21, Defs. Reply, at 20 ("venue is proper here").)  In other words, *Padilla,* along with the Federal Rules of Civil Procedure, require that Defendants challenge Plaintiff's claims on jurisdictional grounds, not on Plaintiff's ability to state a claim, yet Defendants only move to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), and in fact concede the jurisdictional grounds—e.g. that personal jurisdiction and venue are appropriate in this district.

    3.  <u>Substantial Threshold Showing of Incompetence</u>

Separately, Defendants argue that Plaintiff has failed to state a claim because he has not plausibly alleged that he is incompetent.  (Defs. Mot. to Dismiss, at 21–28.)  Under *Ford*, a Plaintiff must make "a substantial threshold showing of insanity" in order to overcome the presumption of sanity and be afforded a competency hearing.  *See Panetti*, 551 U.S. at 949. Specifically, a Plaintiff must make a substantial showing that his "mental illness prevents him from 'rational[ly] understanding' why the State seeks to [execute him]." *Madison v. Alabama*, 586 U.S. __ (2019) (quoting *Panetti*, 551 U.S. at 959).  "[T]he issue is whether a 'prisoner's concept of reality' is 'so impair[ed]' that he cannot grasp the execution's 'meaning and purpose' or the 'link between [his] crime and its punishment.'" *Id.*  (quoting *Panetti*, 551 U.S. at 960).

Counsel for Plaintiff makes four arguments to show he is incompetent.  First, he does not understand that his execution is punishment for his capital crime.  (Compl., ¶¶ 21–37.)  Second, he has a documented history of mental illness, including delusional and paranoid thinking, starting in childhood and continuing to the present.  (Compl., ¶¶ 38–85.)  Third, his dementia has caused a decline in his mental health.  (Compl., ¶¶ 86–102.)  Fourth, his long-term inability to effectively communicate with counsel evinces his incompetence.  (Compl., ¶¶ 103–108.)  To support each of these arguments, Plaintiff's counsel submitted a series of reports and declarations regarding Plaintiff's conditions, which the court credits.  Most notably, Plaintiff provides a report by Dr. Bhushan Agharkar, stating that Plaintiff lacks a rational understanding of the basis for his execution.  (Agharkar Report, at 11–12.)

Although Defendants dispute Plaintiff's claim of incompetence, they provided no independent evidence of competence.  (Defs. Mot. to Dismiss, at 21–31.)  Based on the record before it, the court finds that Plaintiff has made a sufficient showing to survive Defendants' motion to dismiss.  Having made a substantial showing of incompetence, Plaintiff is therefore

10

entitled to an opportunity to be heard, including a fair hearing.  *See Ford*, 477 U.S. at 425–26 (Powell, J., concurring).

**B.  <u>Preliminary Injunction</u>**

      1.  <u>Likelihood of Success on the Merits</u>

Defendants' opposition to Plaintiff's renewed motion for a preliminary injunction restates the arguments made in their motion to dismiss: (1) that Plaintiff's core habeas claims were not properly brought under 28 U.S.C. § 2241 (ECF No. 26, Def. Opp. to Prelim. Inj. at 7–18) and (2) that Plaintiff has not plausibly alleged that he is incompetent.  (Id., at 18–24.)  However, for the reasons explained above, the court has jurisdiction over Plaintiff's claims and Plaintiff has made the substantial threshold showing required by *Ford,* and in doing so, has demonstrated a likelihood of success on his claim for a competency hearing.  Accordingly, the court finds that Plaintiff has satisfied the likelihood of success requirement for a preliminary injunction.

      2.  <u>Irreparable Harm</u>

In order to prevail on a request for preliminary injunction, irreparable harm "must be certain and great, actual and not theoretical, and so imminent that there is a clear and present need for equitable relief to prevent irreparable harm," and it "must be beyond remediation." *League of Women Voters of U.S. v. Newby,* 838 F.3d 1, 7–8 (D.C. Cir. 2016) (citing *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006)) (internal quotation marks and brackets omitted).  In *Ford*, Justice Marshall acknowledged that "execution is the most irremediable and unfathomable of penalties."  477 U.S. at 411 (citing *Woodson v. North Carolina*, 428 U.S. 280, 305 (1976) (plurality opinion).  Here, absent a preliminary injunction, Plaintiff would be executed without being given the opportunity to be heard regarding his competence to suffer such a sentence.  As this court has already found, Plaintiff has made a

substantial threshold showing of incompetence.  While Defendants may disagree with the Plaintiff's experts regarding his competence, they do not dispute that irreparable harm is likely. (Def. Opp. to Prelim. Inj., at 18–23, 27–29.)  Based on this record, the court finds that Plaintiff has shown that absent injunctive relief, he will suffer irreparable harm.

     3.   Balance of Equities and Public Interest

Defendants devote one paragraph of their opposition to their argument that the government has an interest in enforcing Plaintiff's sentence.  (Def. Opp. to Prelim. Inj. at 28–29.) It is true that "'[b]oth the [government] and the victims of crime have an important interest in the timely enforcement of a [death] sentence.'"  *Bucklew v. Precythe*, 139 S. Ct. 1112, 1133 (2019) (quoting *Hill*, 547 U.S. at 584).  The Supreme Court has made clear, however, that executing someone "whose mental illness prevents him from comprehending the reasons for the penalty or its implications" has been considered "abhorrent" for centuries.  *Ford*, 477 U.S. at 417.  "Just because the death penalty is involved is no reason to take shortcuts—indeed, it is a reason not to do so."  *Purkey v. United States*, 2020 WL 3603779, at *11; *see also Cooey v. Taft*, 430 F. Supp. 2d 702, 708 (S.D. Ohio 2006) ("The public interest has never been and could never be served by rushing to judgment at the expense of a condemned inmate's constitutional rights."); *Harris v. Johnson*, 323 F. Supp. 2d 797, 810 (S.D. Tex. 2004) ("Confidence in the humane application of the governing laws . . . must be in the public's interest.").  Here, this court seeks to avoid the abhorrent act that the Supreme Court warns against by finding that the equities and the public interest favor Plaintiff.

Considering all these factors, the court finds that a preliminary injunction is warranted.

12

### C.  <u>Transfer</u>

Finally, Defendants request that this court transfer all Plaintiff's claims that are not dismissed to the United States District Court for the Southern District of Indiana.  (Defs. Mot. To Dismiss at 3; Defs. Reply at 20 (arguing for transfer even though "venue is proper").)  Transfer is "intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'"  *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612 (1964)).  A district court considering transfer "must evaluate both the convenience of the parties and various public-interest considerations."  *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. 49, 62 (2013).  In *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241, n. 6 (1981), the Supreme Court detailed public and private interest factors a district court must consider.  Private-interest factors include the "relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive."  *Id.* (internal quotation marks omitted).  Public-interest factors include "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law."  *Id.* (internal quotation marks omitted).  However, "a plaintiff's choice [of forum] ordinarily deserves substantial deference."  *Id.* at 242.

In *Starnes v. McGuire*, 512 F.2d 918, 929–933 (D.C. Cir. 1974), the D.C. Circuit articulated five factors affecting transfer in prisoner petitions: (1) difficulty of communication with counsel, (2) difficulty of transferring the prisoner (3) availability of witnesses and files (4)

13

whether the petition sounds in habeas corpus, and (5) speed of resolution.  Where a case involves factors weighing both for and against transfer, "the District Court must determine the correct action in light of all the factors."  *Id.* at 933.

Defendants contend that each of the five *Starnes* factors weigh in favor of transfer. (Defs. Mot. to Dismiss at 35–38.)  Plaintiff does not directly address the *Starnes* factors but does suggest that several important witnesses reside in close proximity to this district.  (Pl. Opp. at 34–35.)  The court is mindful of Defendants' concerns regarding convenience.  However, because transfer is discretionary and Plaintiff's choice of forum is entitled to substantial deference, the court will order Plaintiff to show cause why this case should not be transferred to the United States District Court for the Southern District of Indiana.

## IV.      CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is hereby DENIED and Plaintiff's motion for a preliminary injunction is hereby GRANTED.  It is further ORDERED that Defendants (along with their respective successors in office, officers, agents, servants, employees, attorneys, and anyone acting in concert with them) are enjoined from executing Plaintiff Wesley Ira Purkey until further order of this court.

It is further ordered that Plaintiff must SHOW CAUSE, no later than July 31, 2020, why this case should not be transferred to the United States District Court for the Southern District of Indiana.

Date:  July 15, 2020

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge

14